**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DERRICK RANKINE,** )<br>    **Plaintiff** )<br> ) | **C.A. No. 04-100 ERIE** |
|    **v.** ) | |
| ) | **District Judge McLaughlin** |
| **SUPERINTENDENT FOLINO, et al.,** )<br>    **Defendants.** ) | **Magistrate Judge Baxter** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' Motion for Summary Judgment *Nunc Pro Tunc*, or Relief Under F.R.C.P. 50 [Document # 111] be granted.

**II.    REPORT**

**A.    Relevant Procedural and Factual History**

On March 30, 2004, Plaintiff Derrick Rankine, an inmate formerly incarcerated at the State Correctional Institution at Greene in Waynesburg, Pennsylvania ("SCI-Greene"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.[1] Named as Defendants in Plaintiff's original and amended complaints [Document Nos. 6 and 7] were: Court of Common Pleas, Philadelphia, Pennsylvania ("Common Pleas Court"); David A. Szewczak, Pennsylvania Superior Court Prothonotary ("Szewczak"); Jeffrey Beard ("Beard"), Secretary of the Pennsylvania Department of Corrections ("DOC"); Thomas L. James, Chief Grievance Coordinator for the DOC ("James"); Mr. O'Hara, Office of Professional Responsibility at SCI-

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Fayette in LaBelle, Pennsylvania.

Camp Hill ("O'Hara"); the Program Review Committee ("PRC"); Mr. Bitner, Chief Hearing Examiner ("Bitner"); Superintendent Folino at SCI-Greene ("Folino"); Deputy Jackson, a corrections officer at SCI-Greene ("Jackson"); Deputy Barone, a corrections officer at SCI-Greene ("Barone"); Sharon D'Eletto, Grievance Coordinator at SCI-Greene (D'Eletto"); Jean Scott, Business Manager at SCI-Greene ("Scott"); Dr. Sacks, Psychology Dept. at SCI-Greene ("Sacks"); Captain Hall, a corrections officer at SCI-Greene ("Hall"); Lieutenant A.E. Gumbarevic, a corrections officer at SCI-Greene ("Gumbarevic"); Lieutenant Meighen, a corrections officer at SCI-Greene ("Meighen"); Sergeant Conner, a corrections officer at SCI-Greene ("Conner"); Sergeant Tanner, a corrections officer at SCI-Greene ("Tanner"); Sergeant Santoyo, a corrections officer at SCI-Greene ("Santoyo"); Corrections Officer Stickles at SCI-Greene ("Stickles"); Corrections Officer Stephens at SCI-Greene ("Stephens"); Corrections Officer Rauenswinder at SCI-Greene ("Rauenswinder"); Corrections Officer Mansberry at SCI-Greene ("Mansberry"); Corrections Officer Henry at SCI-Greene ("Henry"); Corrections Officer Jordan at SCI-Greene ("Jordan"); Delford Stump, a corrections officer at SCI-Greene ("Stump"); Mr. Ivan, a counselor at SCI-Greene ("Ivan"); Corrections Officer Engelhardt at SCI-Greene ("Engelhardt"); Corrections Officer Thompson at SCI-Greene ("Thompson"); Corrections Officer Coy at SCI-Greene ("Coy"); Mr. Geehring, Mailroom Supervisor at SCI-Greene ("Geehring"); The Medical Administrator and all Medical Staff at SCI-Greene ("SCI-Greene Medical Administrator"); Corrections Officer Blake at SCI-Greene ("Blake"); Corrections Officer Anderson at SCI-Greene ("Anderson"); Mrs. Barr, Hearing Examiner at SCI-Greene ("Barr"); Corrections Officer Leggett.at SCI-Greene ("Leggett"); Corrections Officer Henderson at SCI-Greene ("Henderson"); Corrections Officer Bowlin at SCI-Greene (Bowlin"); Corrections Officer Schnap at SCI-Greene ("Schnap"); Corrections Officer Johnson at SCI-Greene ("Johnson"); Corrections Officer Bucks at SCI-Greene ("Bucks"); Corrections Officer Hargrove at SCI-Greene ("Hargrove"); and Ms. Mistrik, a hearing examiner at SCI-Greene ("Mistrik").

      Plaintiff raised a number of constitutional claims in both his original and amended complaints, including claims that Defendants violated his rights under the first, fourth, fifth,

2

sixth, eighth, thirteenth and fourteenth amendments to the United States Constitution by: (i) denying him access to the courts and obstructing justice; (ii) retaliating against him for filing lawsuits; (iii) refusing to correct the spelling of his name; (iv) holding him in a cell without heat for approximately one month; (v) subjecting him to verbal taunts and making homosexual demands; (vi) withholding food and medical care; (vii) taking his books and personal items; and (viii) spitting and putting dirty water and feces in his food and coffee.

On or about November 2, 2004, Defendants filed motions to dismiss the complaint and amended complaint [Document Nos. 57 and 61], claiming that Plaintiff failed to state a claim upon which relief may be granted. On April 12, 2005, this Court issued a Report and Recommendation recommending that the motion to dismiss filed by Defendants Common Pleas Court and Szewczak be granted in its entirety, and that the motion to dismiss filed on behalf of the remaining Defendants be granted in part and denied in part. [Document # 80]. By Memorandum Order dated May 12, 2005, District Judge Sean J. McLaughlin adopted this Court's Report and Recommendation. As a result, all of Plaintiff's claims against the following Defendants were dismissed: Common Pleas Court; Szewczak, Geehring, D'Eletto, Scott, Santoyo, Meighen, Jordan, Gumbarevic, PRC, Barr, Tanner, Mistrik, Beard, James, Angelo, Bitner, Barone, Stump, O;Hara, and Bucks. In addition, a number of claims against the remaining Defendants were dismissed, thus leaving the following claims pending before this Court, as alleged by Plaintiff:[2]

---

[2]

Defendants SCI-Greene Medical Administrator, Hargrove, Leggett, Henderson, Bowlin, Schnap, and Johnson had not been served with either the Complaint or the Amended Complaint at the time this Court issued its Report and Recommendation on April 12, 2005; however, this Court found the remaining claims against these Defendants to have some arguable merit sufficient to allow them to proceed, conditioned upon Plaintiff's service of the Complaint and Amended Complaint upon these individuals. (See Document # 80 at p. 38). During a telephonic status conference held before this Court on November 15, 2005, the Attorney General verbally waived service on behalf of the SCI-Greene Medical Administrator; however, Defendants Hargrove, Leggett, Henderson, Bowlin, Schnap, and Johnson had not yet been served by Plaintiff. Plaintiff was thus ordered to complete USM-285 forms for these Defendants to allow them to be served. [Document # 97]. Plaintiff's obligation to serve said individuals was, once again, confirmed by this Court by Order dated May 18, 2006. [Document # 105]. Nonetheless, it is apparent from the docket entries in this case that these individuals were never served by Plaintiff, and no attorney has ever entered an appearance of record on behalf of any of them

- Defendant Hargrove retaliated against him for filing lawsuits and grievances by threatening to make conditions worse for him unless he withdrew his lawsuits and admitted his guilt to the crimes for which he is in jail, spitting in his food and coffee, and pouring dirty water on his food trays. (See Amended Complaint at ¶ 3(a)).

- Defendant Stickles violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by denying him all of his meals and refusing to give him medical attention from February 22, 2004 to March 1, 2004; and denying him all meals from May 3, 2004 to May 8, 2004. (See Amended Complaint at ¶¶ 3(c), 6).

- Defendants Folino and Jackson violated his Eighth Amendment rights by failing to provide him with medical treatment and pain relief for "severe pains" he allegedly suffered as a result of being held in a cell without heat from January 20, 2004 to February 19, 2004. (See Complaint at ¶ 6).

- Defendant Hall violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by threatening his life, spitting in his food and coffee, and pouring dirty water on his food trays. (See Amended Complaint at ¶ 3(a)).

- Defendant SCI-Greene Medical Administrator violated his Eighth Amendment rights by failing to provide him with medical treatment and pain relief for "severe pains" he allegedly suffered as a result of being held in a cell without heat from January 20, 2004 to February 19, 2004, and denying him medical treatment from May 3, 2004 to May 12, 2004. (See Complaint at ¶ 6; Amended Complaint at ¶ 6).

- Defendant Ivan violated his Eighth Amendment rights by failing to provide him with medical treatment and pain relief for "severe pains" he allegedly suffered as a result of being held in a cell without heat from January 20, 2004 to February 19, 2004. (See Complaint at ¶ 6).

- Defendant Sacks violated his Eighth Amendment rights by failing to provide him with medical treatment and pain relief for "severe pains" he allegedly suffered as a result of being held in a cell without heat from January 20, 2004 to February 19, 2004, and ignoring his medical complaints during the period from February 23, 2004 to March 14, 2004. (See Complaint at ¶ 6).

- Defendants Leggett, Stephens, Mansberry, and Rauenswinder violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by spitting in his food and coffee, pouring dirty water on his food trays, and removing all sweets from his food trays. (See Complaint at ¶¶ 8-10; Amended Complaint at ¶¶ 3(a) and (b)).

- Defendant Engelhardt violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by threatening to kill him unless he withdrew his lawsuits and appeals; denying him all of his meals and refusing to give him medical attention from February 22, 2004 to March 1, 2004, and stating that he would continue to do so unless he withdrew his appeals and lawsuits; and denying him all meals from May 3, 2004 to May 8, 2004. (See Complaint at ¶ 11; Amended Complaint at ¶ 3(c), 6).

- Defendant Henry violated his Eighth Amendment rights and retaliated against

4

him for filing lawsuits and grievances by spitting in his coffee, denying him all of his meals and refusing to give him medical attention from February 22, 2004 to March 1, 2004, denying him all meals from May 3, 2004 to May 8, 2004; and pushing him into walls and a door on April 27, 2004. (See Complaint at ¶14; Amended Complaint at ¶ 3(c), 6, 8).

- Defendant Coy violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by spitting in his coffee, denying him all of his meals and refusing to give him medical attention from February 22, 2004 to March 1, 2004, and denying him all meals from May 3, 2004 to May 8, 2004. (See Complaint at ¶ 16; Amended Complaint at ¶ 3(c), 6).

- Defendant Conner violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by spitting in his coffee. (See Complaint at ¶ 16).

- Defendant Blake violated his First Amendment rights by refusing to give him published and religious books from his property; and violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by denying him all of his meals and refusing to give him medical attention from February 22, 2004 to March 1, 2004, and denying him all meals from May 3, 2004 to May 8, 2004. (See Complaint at ¶ 20; Amended Complaint at ¶ 3(c), 6).

- Defendant Anderson violated his First Amendment rights by refusing to give him published and religious books from his property; and violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by denying him all of his meals and refused to give him medical attention from February 22, 2004 to March 1, 2004. (See Complaint at ¶¶ 20; Amended Complaint at ¶ 3(c)).

- Defendants Thompson and Schnap violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by denying him all of his meals and refusing to give him medical attention from February 22, 2004 to March 1, 2004. (See Amended Complaint at ¶ 3(c)).

- Defendant Bowlin violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by denying him all of his meals and refusing to give him medical attention from February 22, 2004 to March 1, 2004, and punching him in the head on April 23, 2004. (See Amended Complaint at ¶¶ 3(c), 8).

- Defendant Henderson violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by denying him all of his meals and refusing to give him medical attention from February 22, 2004 to March 1, 2004, and denying him all meals from May 3, 2004 to May 8, 2004 (See Amended Complaint at ¶ 3(c), 6).

- Defendant Johnson violated his Eighth Amendment rights and retaliated against him for filing lawsuits and grievances by denying him all meals from May 3, 2004 to May 8, 2004. (See Amended Complaint at ¶ 6).

On May 19, 2005, Defendants filed an Answer to Plaintiff's Complaint and Amended Complaint, in which Defendants raise a number of affirmative defenses, including the defense

5

that plaintiff has failed to exhaust his administrative remedies. (Document # 87, Answer at p. 4, Twelfth Affirmative Defense).

On May 2, 2006, this Court issued a Case Management Order requiring all dispositive motions to be filed by September 29, 2006. After neither party filed a dispositive motion within the set time period, this Court issued another Case Management Order, dated December 6, 2006, requiring Plaintiff's Pretrial Statement to be filed by December 21, 2006, and Defendants' Pretrial Statement to be filed by January 5, 2007.

Although neither party had yet filed his/their Pretrial Statement within the prescribed time period, Defendants filed a Motion for Summary Judgment *Nunc Pro Tunc*, or Relief Under F.R.C.P. 50, on January 10, 2007, asserting that Plaintiff failed to properly exhaust his administrative remedies with regard to each of his remaining claims. [Document # 111]. In support of their motion, Defendants subsequently filed a brief, along with an appendix containing copies of all pertinent documents related to each of the grievances that were filed by Plaintiff at SCI-Greene during the relevant time period from February 2004 through September 2004. [Document Nos. 114, 116]. In response to Defendants' motion, Plaintiff has filed a memorandum of law and two self-proclaimed affidavits, in which he attests that he fully exhausted all "192 grievances" that he filed at SCI-Greene "between January 20, 2004 and December 20, 2004." [Document Nos. 120, 121, and 123]. This matter is now ripe for consideration.

### B.     Standards of Review
#### 1.     Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine

6

issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith

7

v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same)

### C.     The Exhaustion Requirement and Procedural Default

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirements that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Thus, federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997). However, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the

administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

In addition, the United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. June 18, 2004). The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

### D.     Exhaustion and Procedural Default applied

In order to exhaust all of the administrative remedies within the Pennsylvania Department of Correction's ("DOC") grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the DOC inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate. The first step in the grievance process is for the inmate to file a claim with the institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804

VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

In this case, Defendants contend that "[a]ll of [Plaintiff's] claims are barred by non-exhaustion or improper exhaustion resulting in their procedural default." (Document # 114, Brief, at p. 4). In support of this contention, Defendants have submitted the Affidavit of Cindy Watson, Grievance Review Officer at the DOC, who attests to the following:

> ... [Plaintiff] has not completed all of the necessary steps in the grievance procedure relative to his claims initiated by Civil Action No. 04-100 E. Specifically, [Plaintiff] did not file for final appeal properly concerning any pertinent grievance that he filed while at the State Correctional Institution at Greene during the time period of February of 2004 through September of 2004.

(Document # 115, Exhibit 2 at ¶ 4). As further support, Defendants have also submitted "true and correct copies of the records maintained in the institutional file, grievance file and grievance history of [Plaintiff]" at SCI-Greene, as attested to by Diane Thomas, Administrative Officer at SCI-Greene. (See Affidavit of Diane Thomas attached as Exhibit 1 to Document # 115, at ¶ 3; Document # 116, Appendix).

An independent review of the records submitted by Defendants reveals that, from January 20, 2004, through August 25, 2004, Plaintiff filed 143 grievances regarding prison conditions. (Document # 116, Appendix).[3] Of these 143 grievances, the records disclose that 115 were rejected by the Grievance Coordinator because they were "not signed and/or dated." During a telephonic hearing held before this Court on December 20, 2004, Dan Davis, the Superintendent's Assistant at SCI-Greene, clarified under oath that these rejected grievances

---

[3] The Court notes that Plaintiff claims to have filed a total of 192 grievances between January 20, 2004 and December 20, 2004. During a telephonic hearing held before this Court on December 20, 2004, Dan Davis, the Superintendent's Assistant at SCI-Greene, testified that Plaintiff was transferred to SCI-Greene on or about January 21, 2004, and from that date through December 20, 2004, Plaintiff had filed a total of 191 grievances, which essentially corroborates Plaintiff's claim. (See Document # 91, Transcript of December 20, 2004 hearing, at p. 6).

10

were "generally not answered.... due to the fact that [Plaintiff's] been informed he needs to correspond with DOC by the name that he was incarcerated under." (Document # 91, transcript of December 20, 2004 hearing, at p. 6).  Mr. Davis went on to explain that "[Plaintiff] continually adds an "e" to his [sur]name, which he was not incarcerated under that name, he was incarcerated under the name of Rankin, without the "e." (Id.).  Thus, although Plaintiff did date and sign each of these grievances as "Derrick Rankine," they were rejected because he refused to submit his grievances under his commitment name of "Derrick Rankin."

In his Affidavit opposing Defendants' summary judgment motion, Plaintiff essentially argues that Defendants' rejection of his grievances "on the grounds that Plaintiff's name is not Derrick Rankine but Derrick Rankin" frustrated his attempts to exhaust his administrative remedies. (See Document # 123 at ¶ b).[4]  At first blush, Plaintiff's argument is facially appealing; however, a closer look at the record indicates that Plaintiff was more responsible for frustrating the administrative process than were the Defendants.  In particular, in response to Plaintiff's appeal of the rejection of what appears to be his second grievance at SCI-Greene (Grievance No. 74134, dated January 28, 2004), the Superintendent, Defendant Folino, instructed Plaintiff that "[i]nsofar as name of commitment is Derrick Rankin, please use that name on all correspondence with the Department of Corrections." (See, Document # 116, Appendix, at p. 17).  Defendant Folino went on to state that "[i]f this issue is important to you, edit the grievance with your name of commitment and resubmit it within five calendar days." (Id.).  Despite this offer of accommodation, Plaintiff stubbornly refused to resubmit his grievance under the commitment name of "Rankin."[5]

---

[4]

Plaintiff actually contends that "all 192 grievances" were rejected because he failed to submit them under the name "Derrick Rankin."  Given the multitude of grievances involved in this case, to which Plaintiff claims he did not have access at the time he submitted his Affidavit, and in light of the fact that a vast majority (80%) of the grievances were rejected by Defendants because Plaintiff did not use the name "Derrick Rankin," the Court forgives this factual inaccuracy and believes Plaintiff made this contention in good faith.

[5]

On subsequent occasions, Defendant Folino offered Plaintiff this same accommodation of a five day grace period to resubmit his rejected grievance under the commitment name of Derrick Rankin, but each time Plaintiff failed to do

11

On February 20, 2004, in response to Plaintiff's appeal of rejected Grievance No. 75768, Defendant Folino gave Plaintiff the following explanation and instructions regarding the correction and/or use of his commitment name:

> .... you were committed by Philadelphia County to the Pennsylvania Department of Corrections under the name of Derrick Rankin; therefore, that is your name of commitment.
>
> The only sure way of changing this situation of your name, if it is inaccurate, is for you to contact the court of commitment (Philadelphia) and request that correction.
>
> You may also contact Ms. Thomas, Records Supervisor, SCI Greene, to see if she may be of any assistance to you in this matter.
>
> **Finally, until the situation of your name is addressed by you appropriately, you are to use your name of commitment on any and all correspondence with the Department of Corrections, e.g., request slips, grievances, etc.**

(See Document # 116, Appendix, at p. 55).

Despite these explicit instructions, Plaintiff steadfastly continued to submit all subsequent grievances under the name of Derrick Rankine, which caused the vast majority of them to be rejected at the first level of the administrative process. However petty the reason for rejecting Plaintiff's grievances may appear to Plaintiff, this Court is not in a position to dictate DOC policy. As a prisoner subject to institutional control, it is incumbent upon Plaintiff to adhere to the proper procedures for filing and appealing grievances. This he obstinately refused to do. Thus, Plaintiff's attempt to deflect blame for his failure to properly exhaust administrative remedies falls on deaf ears.

Furthermore, despite Plaintiff's claim of frustration, he did, in fact, make numerous attempts to obtain final review of several grievances, most of which had been rejected initially; however, these attempts proved unavailing because Plaintiff failed to follow proper procedures. In particular, the records contain a number of responses from the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"), which evidence Plaintiff's failed attempts to fully exhaust his administrative remedies with regard to the following grievances:

---

so. (See Document # 116, Appendix 2 at pp. 27 and 33).

1.  <u>Grievance Nos. 83122, 83124, 83772, and 83774</u>
    Plaintiff mailed copies of these grievances and related institutional responses to the DOC Secretary, but, apparently, failed to submit an appeal explaining his reasons for appealing the institution's responses regarding the issues raised in the grievances. As a result, the DOC Secretary stated that "[w]ithout an appeal to this office, we have no way of knowing what your issue(s) continue to be and we are therefore unable to conduct final review based on those merits." (See Document # 116, Appendix, at p. 361).

2.  <u>Grievance # 81096</u>
    Plaintiff sent a letter to the DOC Secretary regarding this grievance, but failed to include the required documentation relating to his appeal, including the Grievance, Initial Review, Appeal to the Facility Manager, and the Facility Manager's decision. As a result, Plaintiff's letter was filed without action. (See Document # 116, Appendix, at p. 360).

3.  <u>Grievance Nos. 74129 and 74135</u>
    Plaintiff submitted appeals of these grievances to the DOC Secretary without first appealing them to the Superintendent at SCI-Greene. Thus, final review could not be granted. (See Document # 116, Appendix, at pp. 358-59).

4.  <u>Grievance Nos. 79523, 79524, 77895, 78202, 78227, 78228, 80093, 80095, 80781, 80901, and 80902</u>
    Plaintiff's mass appeal for final review of these grievances was dismissed by the DOC Secretary as untimely. (See Document # 116, Appendix, at p. 366).

5.  <u>Grievance # 80422</u>
    Plaintiff's appeal for final review of this grievance was dismissed by the DOC Secretary as untimely. (See Document # 116, Appendix, at p. 367).

6.  <u>Grievance # 75458</u>
    Plaintiff's appeal for final review of this grievance was not accepted by the DOC Secretary because Plaintiff's appeal to the Superintendent had been dismissed as untimely. (See Document # 116, Appendix, at p. 363).

7.  <u>Grievance # 77982</u>
    Plaintiff attempted to merge three separate issues into this one grievance. As a result, the grievance was rejected for multiplicity by the Superintendent, as well as the DOC Secretary. (See Document # 116, Appendix, at p. 365).

Somewhat ironically, the only grievance that was properly exhausted by Plaintiff, among the 143 grievances that are included in Defendants' Appendix, is Grievance # 76612, in which Plaintiff complains about the spelling of his last name and requests that the spelling be corrected by the institution. (See Document # 116, Appendix, at pp. 73, 364). Unfortunately for Plaintiff,

13

this claim is not at issue in this case.

Based on the foregoing, this Court concludes that Plaintiff has failed to properly exhaust his administrative remedies with regard to any of the remaining claims in this case. Because he is now time barred from exhausting his claims through the administrative process, this case should be dismissed.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment *Nunc Pro Tunc*, or Relief Under F.R.C.P. 50 [Document # 111] be granted.

In accordance with the Magistrate Judges' Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated:  February 2, 2007

cc:    The Honorable Sean J. McLaughlin
       United States District Judge